UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

RAUL MENDEZ,

Plaintiff,

v.

TITAN CONCRETE & CONSTRUCTION, STATE OF IDAHO JUDICIAL BRANCH, IDAHO SUPREME COURT; RICHARD BEVAN; NATE POPPINO; IDAHO 4TH JUDICIAL DISTRICT; STEVEN HIPPLER, JAMES CAWTHON; CYNTHIA WALLACE; GERALD SCHROEDER; ADAM DINGELDEIN; ADA COUNTY TRIAL COURT ADMINISTRATOR; ADA COUNTY CLERK; ADA COUNTY RECORDER; BANNER BANK; HAWLEY TROXELL; INTERMOUNTAIN GAS; GIVENS PURSLEY; RUSSELL SWAINSTON; and GORDON REES SCULLY MANSUKHANI,

Defendants.

Case No. 1:26-cv-00516-BLW

**MEMORANDUM DECISION & ORDER**

## INTRODUCTION

Before the Court are three motions filed by pro se Plaintiff Raul Mendez: (1) an Application to Proceed in District Court Without Prepaying Fees or Costs; (2) a

Motion for Judicial Notice; and (3) a Motion to Disqualify Judge B. Lynn Winmill. *See* Dkts. 1, 3, 5. Mendez has also conditionally filed a complaint against Titan Concrete & Construction and numerous other defendants for a variety of federal and state-law claims arising from a property dispute and proceedings in Idaho state courts. He seeks $2 billion in damages. For the reasons explained below, the Court will deny all pending motions and defer screening Mendez's proposed complaint.

## DISCUSSION

### A. The Motion to Disqualify

The Court will first address Mendez's motion to disqualify. Mendez contends that the undersigned judge has demonstrated bias and prejudice against him in prior litigation. In support of that contention, he points to various adverse rulings. He alleges that the Court has disregarded controlling law, failed to protect his constitutional rights, and improperly handled matters relating to Ada County's acquisition of a tax deed to his property. Additionally, Mendez objects to statements concerning his litigation history and the possibility of restrictions on future filings. According to Mendez, these circumstances demonstrate both actual bias and an appearance of partiality requiring reassignment of this case to another judge.

The Court is not persuaded. Under 28 U.S.C. § 455(a), a federal judge must disqualify himself in any proceeding in which his impartiality might reasonably be

questioned. Section 455(b)(1) additionally requires disqualification where a judge has a personal bias or prejudice concerning a party. Similarly, 28 U.S.C. § 144 provides for disqualification when a party submits a timely and legally sufficient affidavit demonstrating personal bias or prejudice. Although the challenged judge must accept the factual allegations in a § 144 affidavit as true for purposes of determining its legal sufficiency, the judge may deny the motion if those allegations do not establish a legally sufficient basis for disqualification. *United States v. Sibla*, 624 F.2d 864, 867–68 (9th Cir. 1980).

As the Supreme Court has explained, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Rather, opinions formed by a judge on the basis of facts introduced or events occurring during judicial proceedings ordinarily do not warrant disqualification unless they display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

Mendez has not established grounds for disqualification. His allegations concern rulings and statements made during prior judicial proceedings. Although Mendez disagrees with those rulings and believes they demonstrate prejudice against him, disagreement with judicial decisions is not a basis for recusal. Nor do his allegations concerning the Court's discussion of his litigation history or the possibility of a pre-filing order establish the deep-seated favoritism or antagonism

contemplated by *Liteky*. Finally, the allegations in Mendez's supporting declaration are legally insufficient to establish personal bias or prejudice. Likewise, they would not cause a reasonable person, knowing all the relevant circumstances, to question the Court's impartiality under § 455(a). Accordingly, Mendez's motion to disqualify will be denied.

**B. Application to Proceed *In Forma Pauperis***

The Court will also deny without prejudice Mendez's application to proceed *in forma pauperis*.

Under 28 U.S.C. § 1915(a)(1), a court may authorize a litigant to proceed without prepaying the filing fee upon submission of an affidavit demonstrating that the litigant is unable to pay such fees. Although a litigant "need not be absolutely destitute" to qualify for in forma pauperis status, the affidavit must provide sufficient financial information to permit the Court to determine whether paying the filing fee would deprive the applicant of life's necessities. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948); *Escobedo v. Applebees,* 787 F.3d 1226, 1234–35 (9th Cir. 2015).

Here, Mendez has not provided sufficient information for the Court to make this determination. His application is deficient for several reasons, including the following:

***Incomplete Information Regarding Monthly Living Expenses.*** Mendez has

not adequately disclosed his monthly living expenses. The form application requests line-item information regarding various different potential categories of expenses, such as rent or mortgage, food, clothing, medical and dental, and so on. The form also explicitly instructs applicants not to leave any line item blank. It states: "Do not leave any blanks: if the answer to a question is '0,' 'none,' or 'not applicable,' write that response." *IFP App.,* Dkt. 1, at 1.

Despite the clarity of that instruction—and despite having been instructed in at least one other case to comply with that very instruction[1]—Mendez has left most line items blank. Most significantly, he does not indicate whether he pays rent or a mortgage. And the uncertainty regarding his housing expense, if any, is compounded by questions regarding the status of the residential property on West Galileo Street in Boise. In earlier litigations, Mendez identified that property as his home, and he submitted documentation showing that it had an assessed value of $370,100.[2] By the same token, however, he has represented that Ada County obtained a tax deed to that property. *See Mendez v. Ada County*, No. 1:26-cv-

---

[1] *See Aug. 4, 2026 Order in Case No. 1:26-cv-00351-BLW* (Order at Dkt. 7, denying IFP application without prejudice).

[2] For example, in his IFP application in *Mendez v. Ada County*, No. 1:26-cv-00351-BLW, Mendez listed one of his assets as his "home," and he stated that the value of that home was $110,000. *See* Dkt. 1 in No. 1:26-cv-00351-BLW. Yet, he also submitted records showing that as of December 2025, Ada County had assessed the home at $370,1000. Dkt. 4-1, p. ECF 18 in No. 1:26-cv-00351-BLW (Ada County Consolidated Property Tax Bill for Tax Year 2025).

00351-BLW (D. Idaho). Beyond that, the Court does not know the status of the home.

Any renewed application should clarify the present status of the West Galileo Street property. Specifically, Mendez should explain whether he retains any legal or equitable interest in the property; whether the property has been sold following issuance of the tax deed; and, if a sale has occurred, the sales price and whether he received notice of any excess proceeds, submitted a claim for those proceeds, or received any payment. He should also explain his present living arrangements and identify any housing expenses he incurs.

The lack of information regarding Mendez's housing expenses, if any, is not the only deficiency regarding his reported expenses. Indeed, the only specific expenses he lists are for utilities ($310) and transportation ($40). He does not list any other specific expenses.[3] Granted, he does identify an "other" expense of $115

---

[3] On the "food" line, Mendez simply wrote "SNAP," and on the "Medical and dental expenses" line, he wrote "Medicaid." *See IFP App.,* Dkt. 1, at 4. Mendez should provide more complete information concerning these benefits. Specifically, in the first part of the form, which seeks information regarding income, Mendez should identify the forms of public assistance he receives and the monthly value of those benefits, where applicable. *See id.* at 2 (including a line item asking applicants to include income from "Public assistance (such as welfare)"). He should also separately identify his actual monthly expenses. For example, if Mendez receives a particular amount in monthly SNAP benefits (say $275, for example), he should report that amount in the public-assistance line item. Then, on the expense line for food, he should report the amount he actually spends on food each month, including purchases made with SNAP benefits. Similarly, he should disclose his Medicaid coverage as public assistance and report any out-of-pocket medical or dental expenses he incurs.

to $125, but he did not comply with the form's instruction to "specify" the nature of that "other" expense. *See IFP App.,* Dkt. 1, at 5.

In short, after carefully reviewing Mendez's response to this portion of the form application, the Court has more questions than answers.

***Employment Information.*** Mendez also failed to provide complete information regarding his employer and employment history. He lists "Star Cleaning" as his employer, but he does not list his dates of employment or the address of his employer. Again, he has been previously instructed to provide this information. *See Aug. 4, 2026 Order in Case No. 1:26-cv-00351-BLW* (Order at Dkt. 7).

***Information Regarding his Automobile.*** Mendez has not provided the registration number for his automobile. Mendez has been previously instructed to provide this information. *Id.* at 12.

***Information Regarding Assets and Anticipated Changes to his Financial Circumstances and Assets.*** Mendez indicates he does not expect "any major changes" to his monthly income, expenses, assets or liabilities during the next 12 months. The Court will seek clarification of this issue given the ongoing tax-deed proceedings regarding the West Galileo Street property. As noted, Mendez has previously listed the West Galileo Street property as an asset in his IFP applications, but he does not do so on this application. That may be because of the

tax-deed proceedings, although the Court is unsure because it is unaware of the current status of those proceedings. But, as noted above, if Mendez still has the right to redeem the home, or if he has the right to receive any excess payment from a sale, he should so indicate on the form.

For all these reasons, Mendez's application is incomplete and does not allow the Court to accurately assess his ability to pay the filing fee in this action. The Court also notes, again, that Mendez has been advised in other litigations of the need to provide more complete responses in IFP applications. Nevertheless, the application submitted in this action continues to omit information necessary to assess his eligibility under § 1915.

Finally, the Court is not persuaded by Mendez's contention that his eligibility for Medicaid establishes his entitlement to proceed in forma pauperis. The two determinations are governed by different statutes and serve different purposes. Medicaid eligibility is determined by state agencies administering federal and state public-benefit programs under criteria established by the Medicaid Act. By contrast, 28 U.S.C. § 1915 requires a federal court to make its own independent determination whether a litigant is unable to pay the filing fee. Nothing in § 1915 provides that a state agency's determination regarding Medicaid eligibility is binding on a federal court, and Mendez cites no authority so holding. The Court gives due consideration to Mendez's Medicaid eligibility as evidence

bearing on his financial circumstances, but it remains obligated to independently determine whether he has carried his burden under § 1915.

None of these deficiencies necessarily means Mendez is financially able to pay the filing fee. Indeed, he ultimately may qualify to proceed *in forma pauperis*. But the Court cannot make that determination based upon an application that omits material information concerning his income, benefits, assets, and living expenses. Accordingly, the Court will deny the application without prejudice. If Mendez wishes to proceed with this action, he must either pay the filing fee or submit a renewed application that completely and accurately discloses his financial circumstances. Any renewed application must complete every applicable line item on the form. If a category does not apply, or the amount is zero, Mendez must so indicate rather than leaving the space blank. He must also provide the additional information concerning the items identified above.

**C. Screening of the Proposed Complaint; Motion for Judicial Notice**

The Court will defer screening of Mendez's Complaint under 28 U.S.C. § 1915(e)(2) until Mendez establishes his eligibility to proceed *in forma pauperis*. Similarly, the Court will deny Mendez's motion for judicial notice without prejudice. If this action proceeds, Mendez may renew his motion for judicial notice.

# ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motion to Disqualify Judge B. Lynn Winmill (Dkt. 5) is **DENIED**.

2. Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 1) is **DENIED WITHOUT PREJUDICE.**

3. If Plaintiff wishes to proceed with this action, he must either pay the filing fee *or* file a renewed, complete application to proceed *in forma pauperis* by no later than **November 13, 2026.** Any such renewed application shall comply with all requirements discussed above. If Plaintiff fails to either pay the filing fee or submit a renewed, complete application to proceed *in forma pauperis* by **November 13, 2026**, this action will be dismissed without prejudice and without further notice.

4. Plaintiff's Motion for Judicial Notice (Dkt. 3) is **DENIED WITHOUT PREJUDICE** to renewal if this action proceeds.

DATED: October 13, 2026

B. Lynn Winmill
U.S. District Court Judge